UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MARYLYN A. LeBLANC                    CIVIL ACTION NO. 6:13-CV-02641
                                       SECTION P

VERSUS                                 JUDGE HAIK

WARDEN, LOUISIANA                      MAGISTRATE JUDGE HANNA
CORRECTIONAL INSTITUTE
FOR WOMEN


## REPORT  AND  RECOMMENDATION


Marylyn A. LeBlanc is an inmate in the custody of Louisiana's Department of

Public Safety and Corrections.  She is incarcerated at the Louisiana Correctional

Institute for Women in St. Gabriel, Louisiana, serving a sentence imposed following

her 2008 conviction in the 15th Judicial District Court, Lafayette Parish, Louisiana,

on one charge of vehicular homicide and three charges of vehicular negligent injury.

She filed the instant petition for writ of *habeas corpus* on September 6, 2013,

pursuant to 28 U.S.C. § 2254, seeking vacation of her sentence.

This matter was referred to the undersigned for report and recommendation in

accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this

Court.  For the following reasons, it is recommended that the petition be DISMISSED

WITH PREJUDICE.

## Background Facts

The following factual recitation is based on facts stipulated by Ms. LeBlanc. (Rec. Doc. 14-2 at 390-396).  On April 21, 2007, between 7:00 and 8:00 p.m., a three-car caravan was heading south on Louisiana Highway 724, also known as Fieldspan Road, in Lafayette Parish, Louisiana.  The lead car, a 2002 Toyota Camry, was being driven by Michael Hardy.  Mr. Hardy's son Kyle was in the front passenger seat.  Mr. Hardy's wife Genevieve and Kyle's wife Kristy were in the back seat.  Other members of Mr. Hardy's family were in the two following vehicles.  They were all on the way to a family reunion.

At the same time, Ms. LeBlanc was diving a Jeep Grand Cherokee on the same road but in the opposite direction.  As she approached the Hardys' vehicle, she was speeding and driving recklessly.  She veered into the ditch, straightened out her vehicle, and then abruptly crossed into the southbound lane where the Hardys' car was traveling.

Mr. Hardy swerved to the right to avoid a collision, but the Jeep violently struck the side of the Camry, causing it to spin into the ditch off the southbound lane. The violent collision resulted in the death of Genevieve Hardy and injuries to the other three passengers in the Camry.

-2-

Ms. LeBlanc did not stop.  Instead, she again straightened out her vehicle and sped away, driving erratically, northbound on Highway 724 toward Highway 90.  At the corner of those roadways, Ms. LeBlanc drove through the parking lot of Don's Country Corner, struck another vehicle, and spun across Highway 90 into the ditch. She again entered the highway, then sped away from the second collision, heading west toward Rayne, Louisiana.  She then turned on South Ridgefield Highway, heading south.  She was eventually stopped by patrol units from the Lafayette Parish Sheriff's Office.

When stopped, Ms. LeBlanc exhibited slurred speech and glossy red eyes.  She performed poorly on the field sobriety test.  Her blood samples were analyzed by the Louisiana State Police Crime Lab and found to contain methadone, meprobamate, hydrocodone, cocaine, diazepam, and marijuana.  Marijuana and cocaine were both found in her vehicle.

## PROCEDURAL HISTORY

On the day of these events, Ms. LeBlanc was arrested and taken into custody. On June 21, 2007, she was charged in a bill of information with the following offenses:  vehicular homicide, three counts of vehicular negligent injuring, operating a motor vehicle on a public highway while under the influence of controlled dangerous substances, possession of cocaine, possession of marijuana, operating a

-3-

motor vehicle in a criminally negligent or reckless manner, two counts of hit and run, having no driver's license in her possession, and illegal maneuvering through the parking lot of the store. (Rec. Doc. 14-2 at 307-308).

On March 13, 2008, Ms. LeBlanc pleaded guilty to vehicular homicide and three counts of vehicular negligent injuring, and the remaining charges were dismissed. (Rec. Doc. 389-397). On September 8, 2008, Ms. LeBlanc was sentenced. On the charge of vehicular homicide, she was sentenced to serve thirty years incarceration at hard labor, with three years of the imprisonment without the benefit of probation, parole, or suspension of sentence, with credit for any time already served. On each of the three charges of vehicular negligent injury, she was sentenced to serve a prison term of six months, with the six month sentences running concurrently with the sentence on the vehicular homicide charge. (Rec. Doc. 14-2 at 450-452).

Ms. LeBlanc filed a motion for reconsideration of her sentence on September 11, 2008 (Rec. Doc. 14-2 at 327), which was denied by the trial court on September 16, 2008 (Rec. Doc. 14-2 at 328).

Ms. LeBlanc then appealed, solely arguing that her sentence was excessive. (Rec. Doc. 15-2 at 21). Louisiana's Third Circuit Court of Appeal agreed that her sentence for vehicular homicide was too harsh, vacated the sentence, and remanded

the matter to the district court for resentencing. (Rec. Doc. 14-1 at 145-162). The Third Circuit also severed the misdemeanor sentences on the conviction for three counts of vehicular negligent injuring and instructed Ms. LeBlanc to file an application for a writ of supervisory review within thirty days if she chose to seek review of the misdemeanor sentences. (Rec. Doc. 14-1 at 161). This decision was reported as *State of Louisiana v. LeBlanc*, 08-1533 (La. 06/10/09), 12 So.3d 1125.

The record contains no evidence that Ms. LeBlanc ever challenged the sentence on the vehicular negligent injuring charges.

The state filed a writ application with the Louisiana Supreme Court, seeking reversal of the Third Circuit's ruling. The writ application was granted (Rec. Doc. 14-1 at 180), and on July 6, 2010 the Supreme Court reversed the Third Circuit's ruling and reinstated the thirty-year sentence. (Rec. Doc. 14-1 at 163-175). This decision was reported as *State of Louisiana v. LeBlanc*, 2009-K-1355 (La. 07/06/10), 41 So.3d 1168.

On July 5, 2011, Ms. LeBlanc filed an application for post-conviction relief with the state district court (Rec. Doc. 14-1 at 56) and a supporting memorandum (Rec. Doc. 14-1 at 83). She raised four issues: (1) that she was denied effective assistance of trial counsel because her decision to plead guilty was induced by her counsel's representation that she would receive a more lenient sentence if she pleaded

guilty; (2) that she was denied effective assistance of counsel due to the imposition of an excessive sentence; (3) that she was denied effective assistance of counsel because no motion to quash the "bill of indictment" was filed; and (4) that she was denied her right to judicial review guaranteed by the Louisiana constitution.  The application was denied on July 21, 2011.  (Rec. Doc. 14-1 at 287).

In September 2011, Ms. LeBlanc applied to Louisiana's Third Circuit Court of Appeal for writs of review regarding the trial court's denial of her application for post-conviction relief.  (rec. Doc. 15-5 at 56).  The writ application was granted in part and denied in part on August 31, 2012 (Rec. Doc. 14-1 at 41).  The Third Circuit denied the writ application with regard to Ms. LeBlanc's claim that her sentence was excessive, finding that there was "no error in the trial court's ruling that this claim was fully litigated on appeal."  (Rec. Doc. 14-1 at 41).  With regard to her other claims, the Third Circuit remanded them to the trial court "for consideration as they were not fully litigated on appeal. . . ."  (Rec. Doc. 14-1 at 41).  On September 13, 2012, Ms. LeBlanc filed a motion for rehearing with regard to her excessive sentence claim.  (Rec. Doc. 14-1 at 36).  The motion was denied on November 28, 2012.  (Rec. Doc. 14-2 at 267).

Having reviewed the Third Circuit's ruling of August 31, 2012, the trial court ordered Ms. LeBlanc, on September 5, 2012, to state the reasons why she failed to

raise on appeal the claims asserted in her application for post-conviction relief other than the excessive sentence claim.  (Rec. Doc. 14-1 at 42).  The record contains no indication that Ms. LeBlanc ever filed such an explanation.  However, she must have filed a motion for rehearing, which does not appear in the record, because the trial court denied a motion for rehearing on September 27, 2012.  (Rec. Doc. 14-1 at 34).

Then, on October 3, 2012, Ms. LeBlanc filed a memorandum in support of the remanded claims for post-conviction relief.  (Rec. Doc. 14-1 at 238).  In the memorandum, she addressed the same four issues set forth in her original application for post-conviction relief.  According to a November 8, 2012 minute entry issued by the trial court, another application for post-conviction relief and supporting memorandum were received by the trial court on October 15, 2012, alleging the same errors that had already been considered.  (Rec. Doc. 14-2 at 265).  No such document was found in the record, however.  Perhaps the trial court was referring to the memorandum in support of the remanded claims for post-conviction relief which is dated October 3, 2012 and stamped as having been received by the criminal department of the Lafayette Parish Clerk of Court's office on October 8, 2012.  (Rec. Doc. 14-1 at 238).  Perhaps the memorandum was received by the trial court four days after that.  Nevertheless, the trial court found, first, that Ms. LeBlanc continued to assert the excessive sentence claim that had already been fully litigated and, second,

failed to address why she did not raise her other claims on appeal.  The trial court therefore found no claim upon which post-conviction relief could be granted, and her application was denied.  (Rec. Doc. 14-2 at 265).

The record does not contain an application by Ms. LeBlanc to the Third Circuit for review of the trial court's decision.  However, she did apply to the Louisiana Supreme Court for supervisory or remedial writs on January 3, 2013 (Rec. Doc. 14-2 at 268), and the application was denied on May 31, 2013.  (Rec. Doc. 14-2 at 269).  She requested rehearing of that ruling, but that application was also denied.  (Rec. Doc. 14-2 at 270).  These decisions were reported at *State v. LeBlanc*, 2013-0027 (La. 5/31/13), 118 So. 3d 389, *reconsideration denied*, 2013-0027 (La. 8/30/13), 120 So. 3d 253.

The instant petition was filed on September 6, 2013.  (Rec. Doc. 1).

## ANALYSIS

Ms. LeBlanc does not seek to have her conviction overturned nor does she challenge the sentence on the negligent vehicular injuring counts (which has already been served).  Instead, she seeks to have her sentence on the vehicular homicide conviction shortened, arguing four grounds for relief.  First, she argues that she received ineffective assistance from her trial counsel in that he advised her to plead guilty in order to get a lesser sentence.  Second, she argues that her sentence is

disproportionate to the crime and therefore violates the 8th Amendment.  Third, she argues that her trial counsel was ineffective because he failed to seek to have the bill of information quashed.  Fourth, she argues that she was denied the right to judicial review of her sentence because she was denied access to certain documents including the transcript of her plea hearing.  These are the same four issues raised in her applications for post-conviction relief.  The claim that her sentence was excessive was also previously raised in her appeal, and it is the only claim that was addressed on the merits by Louisiana state courts.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies to Ms. LeBlanc's petition.  The threshold questions in *habeas* review under the AEDPA are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.[1] In this case, the state concedes that Ms. LeBlanc's petition is timely and that she has exhausted her state-court remedies with regard to all four claims asserted.  The state does not allege that Ms. LeBlanc's claims are procedurally defaulted.  Therefore,

---

[1]     *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997), citing 28 U.S.C. §§ 2254(b) and 2254(c).

without addressing whether the claims actually were exhausted or procedurally defaulted, the undersigned will review all of Ms. LeBlanc's claims on the merits.

## A.   THE STANDARD OF REVIEW.

The AEDPA provides standards of review for questions of fact, questions of law, and mixed questions of fact and law.  A state court's factual findings are presumed to be correct,[2] and a reviewing court must give deference to state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[3]  The statute codifies both the presumption of correctness that attaches to state court findings of fact and the clear and convincing evidence burden placed on a petitioner who attempts to overcome that presumption.[4]

A state court's determination of questions of law and mixed questions of law and fact must be given deference unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.[5]  A state court's decision is contrary to clearly

---

[2]     28 U.S.C. § 2254(e)(1).

[3]     28 U.S.C. § 2254(d)(2).

[4]     28 U.S.C. § 2254(e)(1).

[5]     28 U.S.C. § 2254(d)(1); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).

-10-

established federal law if:  (1) the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.[6]  A state court decision unreasonably applies federal law if it either:  (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.[7]  An unreasonable application of federal law is different from an incorrect application of federal law.  The court need not determine whether the state court's reasoning is sound; rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[8]  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[9]

In this case, Ms. LeBlanc seeks relief from the July 2010 and August 2013 decisions of the Louisiana Supreme Court.  The first is a lengthy opinion, setting forth the Court's reasons for ruling, which is entitled to deference.  The second is a

---

[6]     *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010); *Hill v. Johnson*, 210 F.3d at 485.

[7]     *Penry v. Johnson*, 532 U.S. at 792; *Woodfox v. Cain*, 609 F.3d at 789.

[8]     *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[9]     *Price v. Vincent*, 538 U.S. 634, 641 (2003).

one-word denial of Ms. LeBlanc's writ application.  When a reviewing federal court is "faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter."[10]  The prior decision was the trial court's minute entry of November 2012, but it was not a ruling on the merits. As noted previously, however, the undersigned will not address whether Ms. LeBlanc's claims are procedurally defaulted, since the State did not raised that issue, and will solely review the merits of her claims.

**B.    CLAIM NO. 1.  INEFFECTIVE ASSISTANCE OF COUNSEL RELATED TO THE DECISION TO PLEAD GUILTY.**

Ms. LeBlanc's first claim is that her trial counsel provided ineffective assistance by inducing her to plead guilty by representing that she would not receive the maximum penalty if she did so.  She claims that "[h]e had absolutely convinced her that she would receive a reduced sentence."  (Rec. Doc. 1-2 at 13).  In fact, however, the statutory maximum sentence of thirty years imprisonment on the vehicular homicide charge was imposed after Ms. LeBlanc pleaded guilty.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the

---

[10]    *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999).

proceedings against them."[11]   When a defendant collaterally attacks her conviction or sentence based on the effectiveness of her counsel, she has the burden of proving by a preponderance of the evidence that her constitutional rights have been violated.[12] The right to effective counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."[13] To prevail on a claim of ineffective assistance of counsel, Ms. LeBlanc must therefore demonstrate: (1) that her attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that her attorney's deficient performance prejudiced her.[14]   A failure to establish either prong is fatal to the claim.[15]   The parts of the test need not be analyzed in any particular order, and there is no need to consider the remaining part once an insufficient showing has been made concerning the other.[16]

---

[11]      *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

[12]      *James v. Cain*, 56 F.3d 662, 667 (5th  Cir. 1995); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976).

[13]      *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

[14]      *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, e.g., *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

[15]      *United States v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 280 (5th Cir. 1997).

[16]      *Goodwin v. Johnson*, 132 F.3d 162, 173 at n. 6 (5th Cir. 1998), citing *Strickland v. Washington*, 466 U.S. at 697.

In analyzing the professional competence part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[17]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[18]

To satisfy the prejudice part of the test, Ms. LeBlanc must demonstrate that her attorney's actions or inactions were "so serious as to render the proceedings unreliable and fundamentally unfair."[19]  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not prejudice the defense."[20]  Prejudice is demonstrated only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[21]  Thus, to establish prejudice

---

[17]     *Strickland v. Washington*, 466 U.S. at 689.

[18]     *Strickland v. Washington*, 466 U.S. at 689.

[19]     *United States v. Patten*, 40 F.3d 774, 777 (5th Cir. 1994), citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[20]     *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984).

[21]     *Strickland v. Washington*, 466 U.S. at 694.

due to her trial counsel's alleged ineffectiveness, Ms. LeBlanc must show a reasonable probability that she would not have been convicted had her counsel done those things – or not done those things – that she now complains of.[22]

Ms. LeBlanc contends that her decision to plead guilty was premised on her attorney's representation that doing so would result in a shorter sentence.  The plea agreement that she signed does not mention what her sentence will be but it does set forth the maximum allowable sentences for the crimes with which she was charged. (Rec. Doc. 14-2 at 316-317).  At the change-of-plea hearing, Ms. LeBlanc was asked this question:  "Has anybody promised. . . you that you will be serving a particular amount of time?"  (Rec. Doc. 14-2 at 362).  She did not respond affirmatively.  (Rec. Doc. 14-2 at 362).  She then engaged in the following colloquy with the trial court:

> THE COURT:     Other than what's written on here [the plea agreement form], has anybody promised you anything to get you to sign this?
>
> MS. LEBLANC:   No, sir.
>
> THE COURT:     Anybody threaten you or pressure you in anyway?
>
> MS. LEBLANC:   No, sir.
>
> THE COURT:     You are doing this because you feel this is what's best for you under the circumstances?

---

[22]     *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

-15-

> MS. LEBLANC:    Yes, sir.
>
> THE COURT:      Correct?
>
> MS. LEBLANC:    Yes, sir.  (Rec. Doc. 14-2 at 389-390).

After the prosecutor explained the factual basis for Ms. LeBlanc's plea, the trial court then addressed her again:

> THE COURT:      Are you, in fact, guilty?  Did you do this –
>
> MS. LEBLANC:    Yes, sir.
>
> THE COURT:      – as he recited?
>
> MS. LEBLANC:    Yes, sir.  (Rec. Doc. 14-2 at 396).

Significantly, the trial court then addressed whether Ms. LeBlanc had entered into any further bargain in exchange for her plea.

> THE COURT:      I understand that you do not have a plea bargain.  Is that correct?
>
> MS. LEBLANC:    Yes, sir.  (Rec. Doc. 14-2 at 396.)

Thus, she affirmed that there was no promise made concerning the length of the sentence that was going to be imposed.  The trial court then explained that "your sentence will be whatever is imposed by the Court.  Is that correct?"  Ms. LeBlanc responded, "Yes, sir." (Rec. Doc. 14-2 at 396).  At the conclusion of the hearing, the trial court stated:  "And the sentence, again, will be imposed after a sentencing

hearing and a presentence investigation." (Rec. Doc. 14-2 at 397).  It is clear from the face of the plea agreement and from Ms. LeBlanc's colloquy with the court on the day that she pleaded guilty that there was no promise of any particular sentence made a part of the plea agreement.

When a guilty plea is premised on a promise by defense counsel or the prosecutor, breach of that promise taints the voluntariness of the plea.[23]  But the jurisprudence makes a distinction between an actual promise or guarantee of leniency and an attorney's prediction of leniency.  A defendant's reliance on his attorney's erroneous prediction of leniency is insufficient to render a guilty plea involuntary.[24] Furthermore, when the defendant has the subjective understanding that a lesser sentence will be imposed in exchange for a guilty plea but leniency was not actually promised, the guilty plea will not be abrogated if a heavier sentence is actually imposed.[25]

---

[23]     *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002); *United States v. Amaya*, 111 F.3d 386, 388-89 (5th Cir.1997).

[24]     *United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir.1987)

[25]     *DeVille v. Whitley*, 21 F.3d 654, 658 (5th Cir. 1994) *United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993); *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989).

Any documents signed by the defendant at the time of the guilty plea are entitled to great evidentiary weight.[26]  Therefore, a prisoner seeking federal habeas relief on the basis of an alleged promise that is inconsistent with representations made in open court when his guilty plea was accepted must prove (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.[27]  In this case, however, Ms. LeBlanc did not allege any specific facts to support her claim that she was promised a lighter sentence in exchange for her guilty plea.  She has not stated when or where her counsel made the alleged representations or what sentence her counsel predicted that she would receive.  Similarly, she did not identify a witness to her counsel's alleged statements.  Instead, the representations contained in her plea documents and the statements she made in court belie the contention that she was promised anything beyond the express terms of the plea agreement, which does not contain an agreement as to the length of sentence.

At best, then, Ms. LeBlanc may have formulated a unilateral, subjective misunderstanding concerning what her sentence was likely to be if she pleaded guilty,

---

[26]     *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

[27]     See, e.g., *Daniel v. Cockrell*, 283 F.3d at 703; *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998); *DeVille v. Whitley*, 21 F.3d at 658; *Harmason v. Smith*, 888 F.2d at 1529.

but any such understanding is not supported by the representations she made in signing the plea documents nor is it memorialized in the transcript of the change-of-plea hearing.  Therefore, her subjective understanding does not render her guilty plea involuntary or require that her sentence be abrogated.

Ms. LeBlanc does not allege that her guilty plea was entered involuntarily or unknowingly.  She contends solely that she was deprived of effective assistance of counsel because her counsel stated that she would receive a more lenient sentence if she pleaded guilty.  But she also stated in open court that (1) she had not been threatened, coerced, or placed in fear by any person to induce her plea, (2) she had not received any promises to induce her plea other than those contained in the written plea agreement, and (3) she was pleading guilty because she was guilty and for no other reason.  Like the statements in the written plea agreement, these statements "carry a strong presumption of verity."[28]  Ms. LeBlanc does not allege any specific facts establishing that her guilty plea was induced by any unkept promises or representations regarding her actual sentence.  Her assertion that her trial counsel stated that she would receive less than the maximum sentence if she pleaded guilty is unsupported by any particularized factual allegations and is also unsupported by

---

[28]     *United States v. Stumpf*, 827 F.2d at 1030, quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

an affidavit or other evidence from a third-party witness.  Furthermore, the trial court judge advised Ms. LeBlanc at the change-of-plea hearing that he would make the sentencing decision and that he would do so only after a presentence investigation had been conducted.  He also advised Ms. LeBlanc of the maximum allowable sentence.  The trial court's statements were sufficient to cure any erroneous impression as to the sentence that Ms. LeBlanc might have had and was also sufficient to cure her counsel's alleged mistake in telling her otherwise, if in fact her counsel did so advise her.

Finally, Ms. LeBlanc must show prejudice in order to successfully claim that her trial counsel acted ineffectively by promising a sentence that she did not receive. To do so, she would have to provide evidence that she could have reasonably expected to have prevailed at trial or that the sentence she would have received after trial would have been different from that actually imposed.  But Ms. LeBlanc did not address this in her briefing.  Accordingly, the argument that her counsel was ineffective because he advised her to plead guilty by predicting that her sentence would be less than the statutory maximum lacks merit.

### C.   CLAIM NO. 2.  EXCESSIVE SENTENCE.

Ms. LeBlanc's second claim is that the thirty-year sentence imposed by the trial court and reinstated by the Louisiana Supreme Court is excessive.  Thirty years of

imprisonment is the statutory maximum sentence for a conviction on vehicular homicide.[29]  She argues that, although she was impaired by drug use at the time of the incident, she is not "the worst type of offender for whom maximum sentences [are] typically reserved."  (Rec. Doc. 1-2 at 23).

This issue was raised on appeal, and the Louisiana Supreme Court reinstated the sentence.  An excessive sentence claim presents a question of law.[30]  Therefore, this court must defer to the state court on such a claim unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.[31]

To the extent that Ms. LeBlanc is arguing that her sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding.  Federal habeas corpus relief is available only for violations of federal constitutional law.[32]  To the extent that Ms. LeBlanc is arguing that her sentence is excessive under the Eighth

---

[29]     "Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years.  At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence." La. R.S. 14:32.1(B).

[30]     *Pierre v. Leger*, 6:09-CV-1881, 2011 WL 2559879, *23 (W.D. La. May 16, 2011) report and recommendation adopted, CIV.A. 09-1881, 2011 WL 2560267 (W.D. La. June 28, 2011), aff'd, 495 F. App'x 403 (5th Cir. 2012); *Davis v. Cain*, 44 F.Supp.2d 792, 798 (E.D. La.1999).

[31]     28 U.S.C. § 2254(d)(1).

[32]     *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).

Amendment of the United States Constitution, that argument has no merit.  The Eighth

Amendment "prohibits not only barbaric punishments, but also sentences that are

disproportionate to the crime committed."[33]  Federal courts accord broad discretion to

a state trial court's sentencing decision that falls within statutory limits.[34]  If the

contested sentence falls within the statutory limits, as Ms. LeBlanc's sentence does,

the sentence is entitled to a presumption of constitutionality and will not be upset

unless the sentence is so disproportionate to the offense as to be completely arbitrary

and shocking.[35]  Successful proportionality challenges are exceedingly rare, and

constitutional violations are sustained in only extreme or extraordinary cases.[36]  To

establish that her sentence is unconstitutional, Ms. LeBlanc must prove that "[she] is

exceptional, which in this context means that because of unusual circumstances this

defendant is a victim of the legislature's failure to assign sentences that are

meaningfully tailored to the culpability of the offender, the gravity of the offense, and

the circumstance of the case."[37]

---

[33]     *Solem v. Helm*, 463 U.S. 277, 284 (1983).

[34]     *Haynes v. Butler*, 825 F.2d at 923.

[35]     *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975).

[36]     *Ewing v. California*, 538 U.S. 11, 21 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

[37]     *State v. Pierre*, 02-277 (La. App. 3 Cir. 01/16/04), 854 So.2d at 954, quoting *State v. Young*, 94-1636 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 531, *writ denied*, 95-3010 (La.

The trial court judge explained the reasons that he found the maximum allowable sentence to be appropriate in this case. (Rec. Doc. 14-2 at 443-451). First, he found that Ms. LeBlanc's addiction to drugs could result in the commission of additional crimes; second, he found that she is in need of institutional treatment for her drug addiction; third, he found that the crimes committed were extremely serious; fourth, he found that Ms. LeBlanc knowingly created a risk of death or great bodily harm to more than once person; fifth, he found that the offenses committed resulted in significant permanent injury to the family of the victim.  While he did recognize that Ms. LeBlanc had not previously been convicted of a crime, he also addressed the fact that she was allegedly involved in an altercation with her drug dealer before the accident, that she fled the scene of the accident, was involved in a second crash, almost caused other accident, and again fled, necessitating that she be stopped by law enforcement personnel.  He also considered the drugs she admitted taking in the days preceding the accident and the drugs that were in her vehicle at the time, which he concluded "shows a reckless disregard for her own life and for the lives of others." After reviewing these factors with care and dispassion, the judge decided to impose a thirty-year sentence.

---

03/22/96), 669 So.2d 1223.

Furthermore, the sentence was not as harsh as it could have been, since the sentences on the three convictions for negligent injuring were allowed to run concurrently with the sentence for negligent homicide.  The state also dismissed the charges on eight of the twelve crimes charged, eliminating the possibility of a sentence being imposed with regard to those crimes.

Accordingly, the undersigned finds that Ms. LeBlanc's sentence, although near the top of the statutory sentencing range, is not grossly disproportionate to her crimes. There is nothing arbitrary or shocking about the sentence imposed by the trial court. Ms. LeBlanc did not demonstrate that her sentence is grossly disproportionate to the underlying offense by comparing the gravity of that offense against the severity of the sentence.  Consequently, Ms. LeBlanc has failed to demonstrate that the state court's sentencing decision was contrary to, or involved an unreasonable application of, clearly established federal law.  The undersigned accordingly finds that this claim lacks merit.

**D.    CLAIM NO. 3.  INEFFECTIVE ASSISTANCE OF COUNSEL RELATED TO COUNSEL'S FAILURE TO FILE A MOTION TO QUASH.**

Ms. LeBlanc contends that her trial counsel was ineffective because he failed to file a motion to quash the bill of information that charged her with the commission of twelve separate crimes.  Ms. LeBlanc argues that the bill of information should

-24-

have been quashed because it contained a misjoinder of offenses, since counts one and six were punishable by imprisonment with or without hard labor and triable by a jury of six persons, while the remaining counts are to be tried to the bench without a jury. (Rec. Doc. 1-2 at 38).  Louisiana Code of Criminal Procedure Article 493 reads as follows:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

Because ten of the crimes charged were triable by one mode and the other two were triable by another mode, Ms. LeBlanc argues that her counsel was ineffective for failing to move to quash the bill of information.  Her argument fails for several reasons.

First, it is well-settled that "the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction."[38]  An indictment is sufficient

---

[38]     *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).  See, also, *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985); *Neal v. Texas*, 870 F.2d 312, 316 (5th Cir. 1989).

if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against him and (2) enables him to plead an acquittal or conviction and bar a future prosecution for the same offense.[39]  Ms. LeBlanc has not suggested that the bill of information contains the type of defects meeting those criteria.

Second, when articulated as an ineffective assistance of counsel claim, this claim also lacks merit.  If the issue had been raised by Ms. LeBlanc's trial counsel, the twelve crimes could easily have been recharged in separate bills of information or a grand jury indictment could have been sought.  Therefore, the issue could have been resolved without precluding Ms. LeBlanc's conviction.  Consequently, a motion to quash the bill of information for misjoinder of offenses or a motion to sever the various counts would have been meritless.

Whether to file a motion is generally considered to be a matter of litigation strategy, and counsel's actions may not be considered deficient if, under the circumstances, the challenged action might be considered sound trial strategy.[40] "Strategic choices made [by counsel] after thorough investigation of law and facts

---

[39]     *Alexander v. McCotter*, 775 F.2d at 599, citing *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir.), *cert. denied*, 464 U.S. 822 (1983).

[40]     *Jackson v. Thaler*, 358 F. App'x 585, 586 (5th Cir. 2009), citing *Strickland v. Washington*, 466 U.S. at 689.

relevant to plausible options are virtually unchallengeable."[41]  Similarly, a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.[42]  Here, the defective bill of information was easily reparable and inconsequential in light of Ms. LeBlanc's decision to plead guilty to certain charges in exchange for the dismissal of others.

Finally, since the deficiencies in the bill of information could have been easily remedied by recharging the crimes in separate bills, a motion to quash the bill of information would, at best, have been only temporarily successful.  An attorney is not required to advance every conceivable argument, regardless of merit.[43]  Therefore, an attorney's failure to raise a legally meritless argument cannot support an ineffectiveness claim.[44]  "[C]ounsel is not required to make futile motions or objections."[45]  Consistently, "[c]ounsel cannot be deficient for failing to press a

---

[41]     *St. Aubin v. Quarterman*, 470 F.3d 1096, 1102 (5th Cir. 2006), quoting *Strickland v. Washington*, 466 U.S. at 690.

[42]     *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

[43]     *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

[44]     *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[45]     *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

frivolous point."[46]  Indeed, the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."[47]  The reasoning behind this principle is clear:  "an attorney's failure to raise a meritless argument. . .  cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."[48]

For these reasons, Ms. LeBlanc cannot establish that her counsel's performance was deficient or that it resulted in prejudice.  Therefore, this claim lacks merit.

## E.   CLAIM NO. 4.  ALLEGED DENIAL OF THE RIGHT TO JUDICIAL REVIEW.

Ms. LeBlanc's fourth claim is that she was denied the right to judicial review because she has been unable to obtain copies of certain documents related to her conviction, including but not limited to the transcript of the hearing at which she pleaded guilty.  Ms. LeBlanc expressly articulates this claim as having arisen under the Louisiana Constitution.  She claims that she "was denied her right to judicial review as guaranteed by Article 1 Section 19 of the 1974 Louisiana Constitution." (Rec. Doc. 1-2 at 40).  The cited Constitutional provision states that "[n]o person shall

---

[46]      *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995).

[47]      *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

[48]      *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

be subjected to imprisonment. . . without the right of judicial review based upon a complete record of all evidence upon which the judgment is based."

This is not a claim for which federal habeas relief may be granted.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."[49]  Thus, "[f]ederal habeas courts are without authority to correct simple misapplications of state criminal law or procedure."[50]

Ms. LeBlanc has not alleged that her inability to obtain the plea transcript or any other documents violated any right that might be guaranteed by the United States Constitution.  Accordingly, this ground for relief lacks merit.

### CONCLUSION AND RECOMMENDATIONS

For the reasons stated above,

**IT IS RECOMMENDED** that Ms. LeBlanc's petition be **DISMISSED WITH PREJUDICE**.

---

[49]    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[50]    *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988).  See, also, *Marshall v. Cain*, 5:12-CV-2914, 2014 WL 782866, at *13 (W.D. La. Feb. 25, 2014).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served, with a copy of any objections or response being provided to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of

appealability should issue.  See 28 U.S.C. § 2253(c)(2).  A courtesy copy of the

memorandum shall be provided to the District Judge at the time of filing.

Signed at Lafayette, Louisiana, on April 9th, 2014.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE


COPY SENT:

DATE: ____4/9/2014____
BY: _____EFA_____
TO: _____RTH/PJ_____

-31-